

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG
F. #2010R00153

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 4, 2019

<u>By ECF</u>

The Honorable Kiyo A Matsumoto
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Ilario Sessa
       <u>Criminal Docket No. 11-30 (KAM)</u>

Dear Judge Matsumoto:

    The government respectfully submits this letter in connection with the defendant Ilario Sessa's sentencing, which is scheduled for February 19, 2019.  Given the defendant's egregious and repetitive violations of the terms of supervised released imposed by the Court and for the reasons set forth below, the government submits that the Court should sentence the defendant to a term of one year imprisonment, a sentence at the high end of the advisory guidelines range.[1]

<u>BACKGROUND</u>

    On or about November 8, 2012, Sessa pleaded guilty to racketeering conspiracy, involving loansharking conspiracy, operating an illegal gambling business, and extortion as predicate racketeering acts.  A copy of the government's sentencing submission, which provides a detail account of the crimes committed by Sessa, is enclosed as Exhibit A and incorporated by reference.

---

    [1]  The government recognizes that the defendant suffers from a variety of health issues, many of which were present while Sessa violated the conditions of his release. Although the government notes that these health issues did not stop Sessa from committing the violations of his supervised release, the government does not seek a sentence greater than one year in light of the health issues.

On April 19, 2013, the Court sentenced Sessa to 87 months' imprisonment and three years of supervised release, and imposed a $5,000 forfeiture judgment and $100 special assessment. The sentence was the high end of the Guidelines range determined by the Court. The Court explained in its Statement of Reasons that such a sentence was warranted given the "defendant's significant prior criminal history and his pattern of engaging in violence on behalf of the Colombo organized crime family." Sessa's criminal history includes two crimes of violence. On May 31, 1993, he fired eight rounds from a .380 semiautomatic handgun into an area containing in excess of 1,000 people. (PSR ¶ 185). For his conduct, he was convicted of criminal possession of a loaded firearm in the third degree, and was sentenced to an indeterminate term of imprisonment of 16 months to 4 years. Following his service of this state term, he was transferred to federal custody, where he was convicted of conspiring to possess cocaine with intent to distribute and defrauding the United States, and was sentenced to 138 months' imprisonment. (Id. ¶ 186). In addition to those crimes, in the early 1990s, Sessa extorted protection money from drug dealers, operated a loansharking business and, most significantly, assisted in the 1991 murder of Gaetano Amato in connection with the violent Colombo crime family war, an internecine war within the family. (Id.)

Sessa was released from imprisonment on June 7, 2017, at which time he began serving his term of supervised release. As detailed herein, Sessa obtained at least six different prepaid cellular telephones, which he used to communicate, both directly and indirectly, with various members and associates of La Cosa Nostra ("LCN"), and also was surveilled meeting with at least one member of the Colombo organized crime family of LCN. On December 17, 2018, Sessa pleaded guilty to have contact with members of organized crime, a violation of his supervised release.

## DISCUSSION

Among the conditions of his supervised release, Sessa was directed to "not associate, directly or indirectly, in person, through mail, electronic mail, or telephone, with any individual with an affiliation to any organized crime groups, gangs, or other criminal enterprise." Following his release from prison last year, however, Sessa quickly violated the terms of his supervised release by engaging in frequent communication with Salvatore Fusco (Fusco), also known as "Two Pair," and Jerry Ciauri, both of whom are inducted members of the Colombo family. Specifically, between November 2017 and July 2018, the defendant obtained and used the following six different prepaid phones, all with false or no subscriber names and addresses and none of which were reported to the Probation Department (another violation of his release), to directly contact Ciauri and other members and associates of organized crime and make arrangements to meet with Fusco.

| Cellular Telephone Number | Service Provider and Listed Subscriber Address | Dates Used |
|---|---|---|
| (646) ***-0557 | Verizon Wireless<br>John Smith, 501 Surf Ave., Brooklyn, NY | 10/19/2017 to an unknown date |

| Cellular Telephone Number | Service Provider and Listed Subscriber Address | Dates Used |
|---|---|---|
| (718) ***-5938 | Verizon Wireless/Tracfone Wireless<br>Jerry Boss, 9020 91st, Brooklyn, NY | 11/11/2017 to an unknown date |
| (646) ***-4460 | AT&T Wireless<br>Prepaid Customer, 6707 18th Avenue, Brooklyn, NY (the address of an AT&T Store) | 1/18/2018 to an unknown date |
| (646) ***-2331 | AT&T Wireless<br>Prepaid Customer, 6707 18th Avenue, Brooklyn, NY (the address of an AT&T Store) | 3/9/2018 to 9/1/2018 |
| (917) ***-7181 | AT&T Wireless<br>Frank Martin, 1531 W 8th Street, Brooklyn, NY | 4/27/2018 to 9/24/2018 |
| (929) ***-1235 | AT&T Wireless<br>Pre Paid, 1234 Ocean Parkway, Brooklyn, NY | 6/21/2018 to an unknown date |

The government's evidence of these violations was overwhelming, consisting of intercepted telephone calls and text messages between Sessa and Ciauri; physical surveillance of Sessa at a business where Ciauri spent time; a review of a cellular telephone of Ciauri, seized on July 11, 2018, revealing numerous intercepted text messages between Sessa, using six different telephone numbers, and Ciauri; telephone records; and the defendant's admission of such association to his probation officer (upon learning that his calls with Ciauri had been recorded by law enforcement).

<u>DISCUSSION</u>

The telephone calls and text messages between Sessa and Ciauri make clear that Sessa intentionally took steps to avoid detection by law enforcement. For example, in addition to obtaining prepaid cellular telephones and frequently changing telephone numbers, Sessa created a code name – "much more" – to identify himself in his communications with Ciauri. Sessa also intentionally avoided speaking explicitly over the telephone and instead diverted such conversations to in-person meetings. As a result of these precautions, the government still does not have a full understanding of Sessa's activities. The calls, however, do make clear Sessa's continued loyalty to the Colombo family and more specifically, his adherence to its rules. For example, in one conversation, he said, "I don't want to make no mistakes you know," which was a clear reference to Sessa's intention to abide by protocols within the Colombo family and a desire to avoid disrespecting his superiors within the family. Put simply, the defendant's actions on supervised release amount to flagrant and

3

repeated attempts by Sessa to deceive his probation officer.  In light of Sessa's extensive criminal history, the plethora of violent crimes that he committed prior to his arrest in January 2011 and his unyielding dedication to a violent criminal organization, a sentence at the high end of the Guidelines is necessary to achieve the goals of sentencing.

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that the Court should sentence the defendant to a period of one year of imprisonment.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:      /s/
Elizabeth Geddes
Assistant U.S. Attorney
(718) 254-6430

cc:    Clerk of the Court (KAM) (by ECF)
Defense Counsel (by ECF)